(57 N. W. Rep. 80.)

STATE *ex rel* WM. H. STANDISH *vs.* KNUD J. NOMLAND.

Opinion filed December 7th, 1893.

**Constitutional Provision—Subject of Act Not Expressed in its Title—Act Void.**

Chapter 48, Laws 1893, entitled "An act creating the office of the board of state auditors and prescribing the duties thereof," and which provides that said board shall check up the books of the state treasurer at intervals, and ascertain the funds on hand, and shall, with the governor, designate certain depositories for such funds, and shall, with the governor, approve the bonds of such depositories, and which requires the treasurer to deposit the state funds in such designated depositories, and requires such depositories to pay interest thereon, and relieves the said treasurer and his bondsmen from liability for money so deposited, *held*, void, as a violation of § 61 of the state constitution, because the subject of the act is not expressed in the title.

Appeal from District Court, Burleigh County; *Winchester*, J.

Action by the State of North Dakota, at the relation of William H. Standish, attorney general, against Knud J. Nomland, state treasurer, for mandamus. There was judgment for plaintiff, and defendant appeals.

Reversed.

*Frank V. Barnes*, for appellant.

This enactment is in violation of § 6, Art. 11 of the constitution of the state in that it embraces more than one subject. The

leading features of the act are neither expressed nor referred to in the title. The purpose of the provisions of § 61 Const. was, *first*, to prevent "hodge podge" or "log rolling" legislation; *second*, to prevent surprise or fraud upon the legislature; and *third*, to fairly apprise the people through such publication of legislative proceedings as are usually made of the subjects of legislation that are being considered in order that they may have an opportunity of being heard thereon. *Henderson* v. *London & Lane Ins. Co.*, 20 L. R. A. 827; *People* v. *Mahaney*, 13 Mich. 481; *Lim. Mut. Ins. Co.* v. *New York*, 8 N. Y. 241; *State* v. *Davis, Co. Judge*, 2 Ia. 280; *Grubbs* v. *State*, 24 Ind. 295; *Harris* v. *People*, 59 N. Y. 599; Cooleys Const. Lim. 173. The title to the act must express the subject so clearly as to give notice of the legislative purpose to those interested therein. *Re* Pottstown 117 Pa. 538; *State* v. *Tucker*, 48 Ind. 355; *State* v. *Demonchet*, 3 So. Rep. 565; *Brown* v. *State*, 4 S. E. Rep. 861; *Brooks* v. *People*, 24 Pac. Rep. 553; *Sanilac Co.* v. *Aplin*, 36 N. W. Rep. 794, *Gilbert* v. *McCarthy*, 34 Minn. 318; *State* v. *Cantiency*, 34 Minn. 1; *Mississippi and Rum River Boom Co.* v. *Prince*, 34 Minn. 79.

*Wm. H. Standish, Atty Gen'l* and *J. B. Wineman*, for respondent.

Any provision of the statute incidentally connected with or leading to the subject or object expressed in the title will be included by it. *State* v. *Haas*, 2 N. D. 202, (50 N. W. Rep. 254;) *State* v. *Woodmansee*, 1. N. D. 246, (46 N. W. Rep. 970;) *State* v. *Barnes*, 3 N. D. 131; *Blake* v. *People*, 109 Ill. 504.

BARTHOLOMEW, C. J. Chapter 48 of the Session Laws of 1893 is entitled "An act creating the office of the state board of auditors and prescribing the duties thereof." The first section constitutes the secretary of state, the state auditor, and the attorney general such state board of auditors, and directs that as such board they shall examine the books and vouchers of the state treasurer, and ascertain the kind and amount of funds in the treasury, at least twice in each year, and make report of their doings in the premises to the governor; and they shall also witness

and attest the transfer of books, property, and funds by an outgoing to an incoming treasurer, and report to the governor. The second section directs that all funds belonging to the state shall be deposited monthly by the state treasurer in one or more national or state banks in the state, such bank to be designated by such board of auditors and the governor, and such banks shall pay to the state interest on the monthly balances for funds so deposited at the rate of not less than 3, or more than 4, per cent. per annum. Section 3 provides what bond shall be given by such banks, and that the same shall be approved by the governor and said board; and § 4 exempts the state treasurer and his bondsmen from liability for all money so deposited by reason of the failure, bankruptcy, or other act of such bank. It is conceded that the board of state auditors, after strict compliance with all the provisions of the statute, designated certain banks within the state wherein the public funds should be deposited, and so notified the defendant, who is state treasurer, and requested him to deposit the public funds accordingly. The treasurer declined to comply with such request, and it is sought in this action to compel compliance by mandamus. The defendant bases his refusal upon two grounds,—the first being that the act above mentioned was never passed by the legislative assembly of this state; and second, that, if so passed, the act is unconstitutional and void. The trial court ruled both points adversely to defendant, and he appealed the case to this court.

We shall notice but one ground of reversal. The act is assailed as in violation of § 61 of our constitution, which reads: "No bill shall embrace more than one subject, which shall be expressed in its title, but a bill which violates this provision shall be invalidated thereby only as to so much thereof as shall not be so expressed." The equivalent of this provision is found in the constitution of nearly every state in the Union, and few provisions have been oftener before the courts for construction. Originally, the provision was highly remedial in character. Under the old practice of uniting several subjects in the title of one act, or

of stating one subject and adding "and for other purposes," much vicious legislation found its way to the statute books. Legislators, interested in one object, were forced to support others of which they did not approve in order to secure favorable action upon their own measures, and laws were passed of which the public had no intimation until they had gone beyond the stage when petition or remonstrance could avail. This practice was effectually struct down by the constitutional provision above quoted. Sworn to support the constitution, legislators have seldom, if ever wantonly violated this requirement. When violated, it has generally been through inadvertance. The courts, recognizing the character of the evil sought to be effaced, have been slow to rigidly apply the provision to cases where such evils did not, and could not exist, particularly when the result of such rigid application of the provision would be only less mischievous than the evil it was intended to cure. An examination of the cases will show that the author might have used stronger language when he said, in speaking of this provision: "There has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction whose stricture is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted." Cooley, Const. Lim. 176; and see the line of authorities there cited. In *Mauch Chunk* v. *McGee*, 81 Pa. St. 433, it is said that "useful and honest legislation should not be defeated by rigid adherence to the letter of the constitution, or pretext to be caught at to avoid legislation, when it can be fairly reconciled with the constitution." Legislation is often complex. The accomplishment of one purpose sometimes necessarily involves the accomplishment of another purpose. Refinement upon this constitutional provision, and the enforcement of a narrow construction, would greatly embarrass the legislature, and nullify a large percentage of most beneficial legislation. This court should be careful to destroy no legislation sanctioned by the law making branch of the state government unless such legislation be a clear violation of the constitutional requirement.

But we have no duty higher or more sacred than is the duty to preserve in all its integrity every provision in the fundamental law of the state. The provisions of our state constitution are, by the terms of the instrument itself, declared to be mandatory, —mandatory alike upon the legislature and upon this court. If the legislature in any act disregard the mandate, it is the duty of this court to nullify the act, and the fact that the abortive legislation may be highly beneficial and salutory in its nature can in no manner control that duty. Our constitutional provision is, clear, direct and positive. "No bill shall embrace more than one subject, which shall be expressed in its title." What was the subject of the bill in this case? In § 85, Suth. St. Const., it is said: "It is a matter of some difficulty, in many instances, to determine precisely what is the subject of an act, by reason of the contrariety of its provisions and the complexity of its machinery and aims." The language is not inappropriate here. Generally speaking, the subject was the state funds; more specifically it was the security and augmentation of those funds; but neither generally nor specifically is the subject expressed in the title,—"An act creating the office of the board of state auditors and prescribing the duties thereof." Was the act passed for the purpose of creating that board? Was that the subject—the object—of the act? Clearly not. The board was simply an instrumentality for the accomplishment of some purpose, but what purpose no human foresight could determine from that title. Following that title, the legislature might with equal propriety have passed an act relating to any subject upon which the legislature could constitutionally authorize a board to act. We have held that, when the subject of the act was properly expressed in its title, the act might create the means and instrumentalities required for its own accomplishment, (*State* v. *Woodmansee*, 1 N. D. 246, 46 N. W. 970; *State* v. *Haas*, 2 N. D. 202, 50 N. W. 254;) but it has never been held, under this provision, that where the title announced only the instrumentality, the act itself might announce the subject upon which the instrumentality was expected to operate.

Were we disposed to be critical, we might say the title in this case does not even say that much, for it announced but one of several instrumentalities. The action of the governor and state treasurer is just as essential for the accomplishment of the purpose of the act as the action of the board. "It is required that an act shall contain but one subject, but that that be expressed in the title. The title thus made a part of an act must agree with it by expressing its subject. The title will fix bounds to the purview, for it cannot exceed the title subject, nor be contrary to it.  *  *  *  It is not enough that the act embraces but a single subject or object, and that all its parts are germane. The title must express that subject, and comprehensively enough to include all of the provisions in the body of the act." Suth. St. Const. § 87. A single glance discovers that the title in this case meets no single requirement there specified. As fully sustaining the text writer, see, *Astor* v. *Railroad Co.*, (N. Y.) 20 N. E. 594; *Boom Co.* v. *Prince*, 34 Minn. 79, 24 N. W. 361; *State* v. *Kinsella*, 14 Minn. 524, (Gil. 395;) *State* v. *Smith*, 35 Minn. 257, 28 N. W. 241; *Brown* v. *State*, 79 Ga. 324, 4 S. E. 861; *State* v. *Everage*, 33 La. Ann. 120; *Brooks* v. *People*, (Colo. Sup.) 24 Pac. 553; *Montgomery* v. *State*, 88 Ala. 141, 7 South. 51; *Igoe* v. *State*, 14 Ind. 239; *Board of Sup'rs of Sanilac County* v. *Auditor General*, 68 Mich 659, 36 N. W. 794; *Grubbs* v. *State*, 24 Ind. 295. In each of the foregoing cases, statutes were held unconstitutional, as in violation of the provision under discussion; but in no one of said cases, nor in any case to which we have been cited or that we have found, was the violation of that provision so palpable as in this case. As individuals, we may deplore the necessity that compels us to nullify a statute clearly beneficial to this state, but as a court our path is plain. The judgment below should be reversed, and the action dismissed; and it is so ordered.

Reversed.   All concur.